PLUMER (UNITED STATES v.). See Cases Nos. 16,055 and 16,056.

## Case No. 11,232.

PLUMMER v. CONNECTICUT MUT. LIFE INS. CO.

[1 Holmes, 267.] [1]

Circuit Court, D. Maine. Oct., 1873.

EQUITY — REMEDY AT LAW — MULTIPLICITY OF ACTIONS.

A bill in equity is not demurrable on the ground of a plain, adequate, and complete remedy at law, when it appears that the remedy at law can only be prosecuted by means of a large number of actions, involving many questions of values and accounts which it would be practically impossible for a jury to settle.

Bill in equity [by Patience C. R. Plummer against the Connecticut Mutual Life Insurance Company] to obtain a settlement of accounts, and for an injunction to restrain the prosecution of certain actions at law by the defendant corporation. The defendant demurred to the bill, upon the ground that the complainant had a plain, adequate, and complete remedy at law. [For an action at law between the same parties, see Case No. 3,-106.]

---

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

E. F. Hodges, for complainant.
J. S. Rowe, for defendant.

SHEPLEY, Circuit Judge. The bill in equity in this case is instituted by the complainant, as surviving partner of the firm of B. Plummer & Sons, composed at the decease, in March, 1871, of Watson E. Plummer, of the said Watson E. and the complainant. Complainant is the widow of Benjamin Plummer, deceased, who for many years prior to his death had been an agent for insurance companies, and from 1859 to the time of his decease, in April, 1867, was acting exclusively as agent of the defendant company. The bill alleges an arrangement entered into in February, 1859, between the insurance company and Benjamin Plummer, by which he agreed to act as exclusive agent of the company in the eastern part of the state of Maine, to solicit parties to effect insurances in said company, and to perform other services for the company. In consideration thereof, the company agreed to pay him, or permit him to retain, ten per cent of all moneys paid for the first year's premiums, and five per cent upon all subsequent premiums, on all policies issued by the company to any persons taking the same through the influence or solicitations of the said Benjamin. The bill alleges that, upon the faith of this agreement, Benjamin Plummer incurred very great expenses in advertising, in the establishing suitable offices, the employment of clerks, and in travelling and other expenses necessary to develop and increase the business of the company. That he thereby so far increased the business of the company, that, while the company for the year prior to the time of his assuming the exclusive agency had received for premiums in the territory embraced within his agency not over $2,000, it received in the year ending February 1, 1871, from the same territory, over $250,000. On the 1st of November, 1861, the company constituted him the general agent of the company for Maine and the adjacent British provinces, with authority to appoint sub-agents subject to his control and direction, with the right to retain fifteen per cent of all moneys paid for first-year premiums on policies subsequently procured by his exertions, and seven and one-half per cent on all renewal premiums on policies procured by him, whether issued before or after November 1, 1861.

In July, 1863, Benjamin Plummer formed a copartnership with his sons, Oliver B., and Watson E., Plummer, and the business was then conducted under the name of B. Plummer & Sons; and the company accepted the firm as their agents in the place of Plummer alone, and settled its accounts with them on the basis of the agreements with Benjamin. On the 1st of February, 1867, the company entered into a new arrangement with B. Plummer & Sons, agreeing to give them twenty-five per cent of all first-year premiums, and six per cent of all renewal premiums, on policies procured by them subsequently to that date.

On the second day of April, 1867, Benjamin Plummer deceased, and the business was conducted by the surviving partners, with the acquiescence of the defendant company, until the 10th day of July, 1867, when the complainant became a member of the firm with her two sons, continuing to carry on the business in the name of B. Plummer & Sons, with the knowledge and consent of the company. On the 1st of June, 1869, O. B. Plummer, one of the partners, retired, assigning his interest to the remaining partners, who continued the business as before, with like knowledge and acquiescence of the company. On the 1st day of February, 1870, another modification of the contract was made, by the terms of which the firm was thereafter to receive twenty-five per cent of first-year premiums, ten per cent of renewal premiums on the four next succeeding years, and two per cent on premiums for subsequent years.

In March, 1870, W. E. Plummer deceased, leaving the complainant the sole survivor of the firm, who continued to conduct the agency until the power was revoked by the company. The bill further alleges that it was a consideration of the efforts and expenditures of the said Plummers in securing an enlarged constituency of said company, and that it was distinctly stipulated in all the agreements that they were entitled to receive the stipulated percentage as long as any payments should continue to be made on the policies procured by them; and they were ready to perform the duties of the agency as stipulated; and that their rights were the same by agreement, so far as related to the percentage on the policies procured by them, whether the agency was revoked, or in the event of the death of the agent or agents; that, after the death of Watson E. Plummer, in March, 1871, the complainant had made arrangements to continue, and did continue, the agency and business with competent and skilful assistants, as it had theretofore been done; but that in May, 1871, the company revoked the agency, and all power to collect premiums, or percentages on premiums, and refused to allow or pay her anything for the value of the percentages on the future premiums, or in any way to recognize any rights or interests of the complainant therein, or in any premiums whatever paid after the date of the revocation of the agency on policies which had been procured by said Plummer or said firm. When the agency was revoked, policies were in force issued prior to 1861; subsequent to 1861 and prior to 1867; subsequent to 1867 and prior to February 1, 1870; and subsequent to the last date.

The amount of the business created by said Benjamin Plummer and said firm is averred to have been so large that the company had received several millions of dollars from it,

and at the time of the revocation of the agency was receiving a quarter of a million dollars annually, as premiums on policies secured by them. These policies are averred to be in the hands of the defendant, in the usual form of life insurance policies, with conditions so varied and numerous that it would be impossible to set them out; and the bill prays for discovery and production of the policies, that an account may be taken of the complainant's interest therein.

In October, 1869, the firm of B. Plummer & Sons executed a bond to the company, with J. H. Bowler and others as sureties, in the penal sum of $10,000, conditioned for the due performance of their duty as agents, and the payment to the company of all sums collected by them for the company. An action has been commenced by the company on this bond, and is now pending in this court against the said Bowler alone, as surety on the bond. Another action has been commenced, and is now pending in this court, against the complainant, claiming to recover the sum of $50,000, moneys alleged to have been collected by her during the months of March, April, and May, 1871. The complainant alleges that the company in equity has no claim against her, or said Bowler, but in equity is indebted to her in a sum exceeding $100,000. In order to save a multiplicity of actions, and to obtain a just application of the indebtedness of the company to the complainant, in liquidation and cancellation of bond, and to relieve the surety, whom the complainant is in law bound to protect, the bill prays for an account of the value of her interest in the existing policies, and of the policies themselves, and that the company be decreed to pay her the value of such interest, after deducting all sums belonging to the company in her hands, and for an injunction against the prosecution of the suits at law until the rights of the parties are determined, and the value of her interest ascertained, under the rules of commutation recognized in the business of life insurance.

To this bill the company demurs; and, in support of the demurrer, it is claimed that the complainant has a plain and adequate remedy at law, and that there is no need of a court of equity to compel a discovery, as the complainant could compel the agents of the company to produce, in a suit at law, all the evidence required or material.

Where there exists a remedy at law, parties are not remitted by a court of equity to their action at law, unless the relief at law is as adequate, complete, and effectual as in a court of equity. May v. Le Claire, 11 Wall. [78 U. S.] 217.

While the statute declares that there shall be no remedy in equity where there is a plain, adequate, and complete remedy at law, the supreme court of the United States have decided that, to oust the jurisdiction in equity, the remedy at law must be as efficient to the ends of justice, and its complete and prompt administration, as the remedy in equity. Boyce's Ex'rs v. Grundy, 3 Pet. [27 U. S.] 210; Wylie v. Coxe, 15 How. [56 U. S.] 415; Garrison v. Memphis Ins. Co., 19 How. [60 U. S.] 312; Brown v. Pacific Mail Steamship Co. [Case No. 2,025].

So the equity jurisdiction will be entertained where there is an adequate remedy at law, if the peculiar machinery of a court of equity, as a discovery or an injunction, be necessary to do complete justice between the parties. Gass v. Stinson [Case No. 5,-260].

According to the averments of the bill, which, for the purposes of this hearing, are admitted by the demurrer, a claim exists against the company for the value of the percentages in money upon all future accruing premiums on policies procured through the instrumentality of Benjamin Plummer, or of the complainant, or any of the firms in which they had been partners, as the commuted value of such prospective percentages at the time of the dissolution of the agency by death, or the act of the company, could be ascertained under the recognized rules of such commutation as administered and applied in the business of life insurance companies. But this remedy could only be enforced at law in a multiplicity of suits. A portion of the sum must be recovered in a suit in her own name as surviving partner; another portion, in her own name individually, for the percentage on policies procured by her after the dissolution of the firm by the death of Watson E. Plummer. Another suit would be requisite, in which the executor of Benjamin Plummer would be a party; and still another, in which the name of Oliver B. Plummer must be joined in an action at law, to reach the case of the percentage to be paid on policies issued before he retired, although he has no interest now in those percentages. And in these various suits, covering the percentages on over two thousand policies, the questions would have to be determined as affected by the four different classes of percentages, varied according to the varied dates of the policies and the different dates of the premiums; so that it would be practically impossible for a jury to make the requisite computations, or even, within any limits of time during which a jury could be kept in deliberation, to verify the computations and results of the most skilful experts in the science of the computation of such values, who alone could make the requisite computations and apportion the amounts properly in the respective suits. And during the pendency of these actions at law, and after their determination, the aid of a court of equity would be almost necessarily invoked to protect the rights of the sureties to the bond, by making the equitable appropriation of the amounts, if any, found to be due to the complainant in such manner as to protect the rights of the surety. The

demurrer, therefore, must be overruled, and the provisional injunction will issue to restrain the defendant from taking out executions in the suits at law until the final determination of the suit in equity, or until the further order of this court. Injunction ordered.